IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAINY GIBSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 23-3677 |
| | : | |
| v. | : | |
| | : | |
| TIP TOWING AND RECOVERY LLC; | : | |
| JASONE DISENSO, President; JOHN DOE | : | |
| TOW GUY 1; and JOHN DOE TOW | : | |
| GUY 2, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                          October 2, 2023

The *pro se* plaintiff has filed a pleading she titled, a "Writ of Replevin" and "Emergency Order to Show Cause," in which she seeks the return of a vehicle that a towing company, its owner, and two of its employees unlawfully took from her. She also seeks leave to proceed *in forma pauperis*. For the following reasons, the court will (1) deem the plaintiff's pleading to be a civil action complaint filed pursuant to Federal Rules of Civil Procedure 2 and 3,[1] (2) grant the plaintiff leave to proceed *in forma pauperis*, and (3) dismiss the case for lack of subject-matter jurisdiction because the allegations in the complaint do not support this court having diversity jurisdiction under 28 U.S.C. § 1332(a).

I.   ALLEGATIONS AND PROCEDURAL HISTORY

On September 18, 2023, the *pro se* plaintiff, Rainy Gibson ("Gibson"), filed an application for leave to proceed *in forma pauperis* (the "IFP Application") and a document titled, "Writ of Replevin" and "Emergency Order to Show Cause." Doc. Nos. 1, 4. In this latter document, Gibson

---

[1] In federal court, "[t]here is one form of action – the civil action." Fed. R. Civ. P. 2. "A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3.

alleges that the defendants, Tip Towing and Recovery LLC, its owner, Jasone Disenso, and two John Doe tow truck operators trespassed on her property with a tow truck and towed her automobile away without any court order or notice. *See* Compl. at ECF pp. 1–2, Doc. No. 4. When she asked the John Doe defendants for a court order authorizing their actions, they ignored her. *See id.* Gibson claims to have taken pictures of the incident. *See id.* at ECF p. 2.

Gibson asserts that she is a holder in due course of a negotiable instrument that entitles her to the possession of the vehicle, a 2014 Honda Odyssey.[2] *See id.* She has also submitted an "Affidavit of Ownership," stating that she is the owner of the vehicle and that, to her knowledge, no claim or action has been brought that questions her title or right to possess the vehicle. *See id.* at ECF p. 9.

Gibson asserts that Mr. Disenso is wrongfully holding her vehicle, and he has refused to return it to her. *See id.* Based on these allegations, Gibson seeks a total of $150,000 in money damages on her sole claim for trespass to chattels, and an order directing the United States Marshal to retrieve the vehicle from the defendants. *See id.* at ECF pp. 3–4.

## II.   DISCUSSION

### A.   The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative

---

[2] The court notes that Gibson repeatedly uses these types of legalisms in her pleading.

2

> court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Gibson is unable to prepay the fees to commence this civil action. Therefore, the court will grant her leave to proceed *in forma pauperis*.

**B.    Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915 and *Sua Sponte* Review for Subject-Matter Jurisdiction**

Because the court has granted Gibson leave to proceed *in forma pauperis*, the court ordinarily would engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid,

3

the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief").[3] In this case, due to the nature of the allegations in the complaint, the court must first determine whether the court has subject-matter jurisdiction to entertain this action.

---

[3] A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact." *Neitzke*, 490 U.S. at 325, is legally baseless if it is "based on an indisputably meritless legal theory," *Deutsch*, 67 F.3d at 1085, and is factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The use of the term "frivolous" in section 1915 also "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Thus, section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios." *Id.* at 327.
  As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).
  Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).
  In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).
  Additionally, when construing a *pro se* plaintiff's complaint, the court should always "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

As the plaintiff, Gibson bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))). This court can analyze whether a plaintiff such as Gibson satisfies this burden by raising issues concerning the court's subject-matter jurisdiction *sua sponte*. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999) (explaining that courts have independent obligation to determine whether subject-matter jurisdiction exists, even in absence of challenge from any party); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003) ("[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. A necessary corollary is that the court can raise *sua sponte* subject-matter jurisdiction concerns." (internal citation omitted)). In addition,

> [t]he Supreme Court has authorized courts to dismiss under Rule 12(b)(1) for lack of jurisdiction due to merits-related defects in only narrow categories of cases. "[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." [*Bell v. Hood*, 327 U.S. 678, 682–83 (2016).] "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" [*Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)] (quoting *Oneida Indian Nation v. Cty. of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).

*Davis v. Wells Fargo*, 824 F.3d 333, 349–50 (3d Cir. 2016).

### C. **Analysis**

In this action, Gibson has not asserted any federal claims and instead seeks to assert a state-law claim for trespass to chattels against the defendants.[4] *See* Compl. at ECF p. 3. Despite her attempt to prosecute this state-law claim, Gibson fails to adequately allege that the action can be pursued in this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).

The diversity jurisdiction statute, 28 U.S.C. § 1332, grants a district court subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). As stated, "[t]he burden of establishing federal jurisdiction rests with the party asserting its existence," *id.* at 105 (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3), and "in a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity

---

[4] Pennsylvania's common law generally treats a cause of action for trespass to chattel as similar to a cause of action for conversion. *See Sherwood v. Farber*, No. 20 EDA 2021, 2021 WL 5027393, at *6 (Pa. Super. Oct. 29, 2021) (explaining that "[t]respass to chattels is a similar tort" to tort of conversion); *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018) ("The elements of trespass to chattels 'are essentially the same' as conversion." (quoting *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 600 (E.D. Pa. 2016))). The tort of conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Brinich v. Jencka*, 757 A.2d 388, 403 (Pa. Super. 2000) (citation and internal quotation marks omitted). The elements of a cause of action for trespass to chattel require proof that a defendant is "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Restatement (Second) of Torts § 217 (1965); *see Pestco, Inc. v. Assoc. Prods., Inc.*, 880 A.2d 700 (Pa. Super. 2005) ("The tort of trespass to chattels, to the extent it still exists in Pennsylvania, is governed by Restatement (2nd) of Torts § 217 . . . .").

can be confirmed." *Craven v. Leach*, 647 F. App'x 72, 75 (3d Cir. 2016) (quoting *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999)).

For purposes of determining whether parties are completely diverse, an individual is a citizen of the state where the individual is domiciled, meaning the state where the individual is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). As for limited liability companies, "the citizenship of an [limited liability company] is determined by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 418.

In this case, on the issue of citizenship, Gibson describes herself as "one of the people of Pennsylvania" and describes her address as a "temporary post at 4740 Rafi Rd, city [sic] of Easton, County of Northampton, of the United States of America Dejure, Republic." Compl. at ECF p. 1. She provides only a street address for defendants Disenso, Doe 1 and Doe 2 in Allentown, Pennsylvania.[5] *See id.* at ECF p. 7. This is insufficient to meet Gibson's burden of pleading the existence of complete diversity. Moreover, it suggests that Gibson and at least one defendant are citizens of Pennsylvania, meaning that complete diversity does not exist.[6] At bottom, because the

---

[5] "In determining whether allegations against a Doe defendant are sufficient on their face to destroy diversity, courts have looked for 'some clue who the Doe might be, how the Doe might fit into the charging allegations, or how the Doe might relate to other parties.'" *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 30 (3d Cir. 1985) (quoting *Hartwell Corp. v. Boeing Co.*, 678 F.2d 842, 843 (9th Cir. 1982). Since Gibson provides the same street address for the Doe defendants in Allentown for Disenso, their presence in this case is further indication that complete diversity of citizenship is lacking.

[6] In addition to the lack of complete diversity, it appears that Gibson's allegations do not establish that the amount in controversy exceeds $75,000. The court recognizes that "[a] plaintiff's burden of satisfying the amount in controversy required for diversity jurisdiction 'is not especially onerous.'" *Quinones-Velazquez v. Maroulis*, 677 F. App'x 801, 802 (3d Cir. 2017) (per curiam) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016)). In determining whether Gibson can recover the jurisdictional amount, the court must review the allegations in the complaint. *See Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, 685 F. App'x 161, 164 (3d Cir. 2017) (per curiam) ("The amount in controversy for diversity purposes is determined as of the filing of the complaint. Thus, the District Court either had or did not have diversity jurisdiction at that time." (emphasis added) (internal citations omitted)). "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (citation omitted);

court lacks subject-matter jurisdiction, the court will dismiss the complaint without prejudice so that Gibson may reassert her claims in the appropriate state court.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

*see Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997) ("As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint."). Since "[t]he sum claimed by the plaintiff controls if the claim is apparently made in good faith[, i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

Here, Gibson's alleges that the defendants unlawfully trespassed onto her property and took her 2014 Honda Odyssey on September 12, 2023. *See* Compl. at ECF pp. 1–2. She claims that she needs her vehicle because she has "3 kids and need[s] to take [her] kids food shopping, [to] religious meetings, and [to] family outings." *Id.* at ECF p. 7. While Gibson purports to seek a total of $150,000 (consisting of "$10,000 [per] day [for] keeping my private automobile without due process of law" and $100,000 for "[t]he cash value of the car . . . plus all monies [she] put into the car") in damages from the defendants in this case, this court has no trouble finding that such monetary demands are not made in good faith.

In this regard, presuming that the Honda Odyssey is Gibson's sole vehicle, none of the factual allegations in the complaint come close to warranting a $10,000 per day damages award for her inability to use the vehicle. Moreover, it appears to a legal certainty that a 2014 Honda Odyssey (without any indication about the style of the vehicle, its mileage, its general condition, or how Gibson added value to such a depreciable asset) is not worth $100,000. To the contrary, it is highly likely that it is worth only approximately 10% to 20% of that amount. *See, e.g.*, 2014 Honda Odyssey, Kelly Blue Book, https://kbb.com (last visited September 29, 2023) (showing values of 2014 Honda Odysseys ranging from approximately $9,500 to $18,000); *Weisz v. Volkswagen Grp. of Am., Inc.*, No. 16-CV-5565, 2016 WL 9342527, at *1 (C.D. Cal. Nov. 30, 2016) (taking judicial notice of MSRP in Kelley Blue Book). Accordingly, it appears to this court to a legal certainty that Gibson's claim is really for much less than the $75,000 jurisdictional amount.